UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LESLIE BILLINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01767-JMS-MJD |
| | ) | |
| RYZE CLAIM SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY

Leslie Billings brought this putative collective action to challenge what he believes to be an inappropriate exemption of claims adjusters from the minimum and overtime wage requirements of the Fair Labor Standards Act ("FLSA"), among other employment practices not presently at issue.  In particular, Mr. Billings contends that he is not exempt because his compensation does not meet the so-called "salary test."  According to Mr. Billings, his former employer, RYZE Claim Solutions, LLC ("Ryze"), deducted his commission shortcomings from his salary, resulting in payment beneath the regulatory threshold.  Ryze has moved for partial summary judgment, arguing that Mr. Billings' exemption arguments suffer from factual and legal deficiencies.  In fact, the undisputed evidence demonstrates that the commission system was wholly separate from Mr. Billings' guaranteed salary.  Because Mr. Billings satisfies the salary test and does not challenge any other aspect of his FLSA administrative exemption, the Court **GRANTS** Ryze's Motion for Summary Judgment.  [Filing No. 79.]

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, that the movant is entitled to

judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not suffice to defeat summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party

and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### PRELIMINARY MATTERS

In their briefing of this matter, the parties have flouted the undersigned's Practices & Procedures, [Filing No. 22], and the requirements set forth in the Local Rules of this Court. First, the Practices & Procedures require that all exhibits be cited by reference "to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document." [Filing No. 22 at 4.] The parties failed to comply with this format, and it has made review of the summary judgment exhibits needlessly cumbersome. All future filings must comply with this format.

Second, Local Rule 5-1 requires that all briefs "be double spaced." S.D. Ind. L.R. 5-1(b). Neither of Mr. Billings' briefs are double spaced, making it a certainty that Mr. Billings' response brief also fails to comply with the applicable 35-page limit set forth in Local Rule 7-1. S.D. Ind. L.R. 7-1(e)(1).

The Court will excuse these transgressions in this instance—in no small part because there are plenty to go around. But in so doing, the Court in no way minimizes their seriousness. This

3

Court is among the busiest in the country, *see* U.S. Courts, Federal Court Management Statistics, National Judicial Caseload Profile (Mar. 31, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf, and these rules are designed to further the purpose of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1; *cf.* Fed. R. Civ. P. 83 (authorizing local rules and standing practices consistent with the federal rules). The parties must carefully comply with these requirements in all future filings in this matter.

### III.
### FACTUAL BACKGROUND

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). This does not mean, however, that Mr. Billings is relieved of his burden to demonstrate that there is a genuine of material fact requiring a trial. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996). As long as the movant fulfills its "initial responsibility of informing the district court" why there is no genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), then Mr. Billings must meet his burden in response. Mr. Billings' convenient omission of this principle, which is at the heart of federal summary judgment practice, from his discussion of the standard of review, [*see* Filing No. 92 at 25], may help to explain why he later asserts that Ryze's exhibits "do not establish the lack of a genuine issue of material fact" and do not "establish that Plaintiff was paid a biweekly

salary," [Filing No. 98 at 5].[1]  Ryze is required to establish neither; Mr. Billings is required to set

forth evidence to controvert these assertions to the extent they are properly supported.  While Mr.

Billings is entitled to the benefit of reasonable inferences, his mischaracterization of his burden on

summary judgment does not entitle him to any inferences not properly supported by admissible

evidence.  With this observation, the Court turns to the facts relevant to the Court's ultimate

decision on the instant motion.  The parties' myriad evidentiary disputes are addressed below as

appropriate.

### A.  Claims Adjusting for Ryze

Ryze works primarily with insurance companies and financial institutions, providing them

with independent claims adjusters to evaluate insureds' claims of personal injury or property

damage. [Filing No. 81-2 at 2-3.]  Mr. Billings was one such claims adjuster.  [Filing No. 81-2 at

3.]  When an insured of one of Ryze's clients made a claim, Mr. Billings would be dispatched to

investigate and evaluate the claim.  [Filing No. 81-2 at 3.]  Among other things, Mr. Billings was

responsible for interviewing witnesses, inspecting the scene, making coverage recommendations,

assessing the value of the claims, and negotiating settlements.  [Filing No. 81-2 at 3.]

Mr. Billings did not work out of a Ryze office, nor did he report to a single manager.

[Filing No. 81-2 at 3.]  Rather, Mr. Billings worked out of his home without direct supervision and

reported to one of a team of supervisors, depending on the client.  [Filing No. 81-5 at 7; Filing No.

81-5 at 45-46.]

---

[1] Mr. Billings' factual assertions are quintuply difficult to follow due to the wasteful overuse of
phrases such as "See 'Number 1. MSJ Para 9' above, that is reincorporated by reference and
restated herein."  [Filing No. 92 at 8.]  Such statements add no content to legal briefs and should
be omitted from any future filings.

### B.  Payment Scheme

Throughout the relevant period of Mr. Billings' employment with Ryze, which extends from October 20, 2014 until the end of his employment in July 2016,[2] his payment was governed by the terms of his employment agreements.  The 2010 "parent" Employment Agreement (which governed when Mr. Billings worked for Eagle, a predecessor company to Ryze, [*see* Filing No. 97-2 at 1]) provided in part as follows:

> **4.**      **Compensation and Benefits.**
>      (a)      <u>Compensation</u>: Eagle shall pay Employee compensation pursuant to the terms of the attached **Schedule A**.  All such payments will be made in installments at such payment intervals as are the usual custom of Eagle.  Schedule A may be amended from time to time in the sole discretion of Eagle, provided that Eagle shall provide Employee with no less than ten (10) days written notice of any change.

[Filing No. 97-2 at 15.][3]  Paragraph 4(a) of the 2016 Employment Agreement was identical to the 2010 agreement in every material aspect:

---

[2] The longest possible statute of limitations applicable to Mr. Billings' FLSA claims is three years, *see* 29 U.S.C. § 255(a), and Mr. Billings first raised his FLSA claims in his Amended Complaint filed on October 20, 2017, in California state court.  The relevant period for Mr. Billings' claims therefore begins three years prior to that date and extends through his resignation.

[3] Mr. Billings, in surreply, objects that this Agreement should be excluded or the motion should be denied because it was not previously disclosed and because it was filed for the first time in reply.  Arguments regarding evidence make up the bulk of Mr. Billings' briefing on summary judgment.  This objection is addressed at length below.

Mr. Billings also either misunderstands or deliberately mischaracterizes Ryze's objection to what he calls the "February 2012 EA [employment agreement]," [Filing No. 98 at 4], a document which is actually signed and dated May 11, 2009, [*see* Filing No. 93-7 at 14].  Mr. Billings characterizes Ryze's objection as an "authentication objection" and argues that his additional deposition excerpt "addresses the asserted shortcoming."  [Filing No. 98 at 5.]  But Ryze did not object to the authenticity of the agreement.  Rather, it objected to Mr. Billings' factual assertion that the agreement "was automatically renewed every year until superseded" by a 2016 agreement as unsupported by any evidence.  [Filing No. 97 at 13 (quoting Filing No. 92 at 7).]  Mr. Billings' evidence on surreply still does not support this assertion, and it is therefore not entitled to credit.

6

4.  **Compensation and Benefits**.
    (a)  <u>Compensation</u>: RYZE shall pay Employee compensation pursuant to the terms of the attached Schedule A. All such payments will be made in installments at such payment intervals as are the usual custom of RYZE. Schedule A may be amended from time to time in the sole discretion of RYZE, provided that RYZE shall notify Employee of any such changes as soon as practicable.

[Filing No. 81-6 at 3.]

At times prior to the relevant period, the attached Schedule A provided for payment only by commission. [*See, e.g.*, Filing No. 97-2 at 19 (2010 Schedule A).][4] But during the entire relevant period, Schedule A provided as follows:

## Schedule A

Pursuant to and in accordance with the terms of Paragraph 4(a) of the Agreement between RYZE and Employee, RYZE shall pay to Employee compensation as follows:

(1)  <u>Salary</u>:  RYZE shall pay Employee a salary of Nine Hundred Ten Dollars and Zero Cents ($910.00) on a bi-weekly basis (such bi-weekly basis shall be referred to as a "Payroll Period.")

(2)  <u>Commission</u>:  Employee shall be entitled to Commissions as set forth in this Paragraph 2.

Employee shall be assigned a Commission Calculation Rate of 48%. Employee shall be assigned a Commission Bank Threshold of $910. The Commission Calculation Rate shall be applied to the total service fees generated by Employee during a Payroll Period, less Employee's Commission Bank Threshold, to determine Employee's Current Earned Commission. At the end of each Payroll Period, Employee's Current Earned Commission shall be added to any Past Balance in his/her Commission Bank to determine Employee's Total Balance for that Payroll Period. If, at the close of a Payroll Period, Employee's Total Balance is greater than zero ($0.01 and higher), Employee shall be paid that amount as Commission for that Payroll Period. If Employee's Total Balance is less than zero ($-0.01 and lower), Employee will not be entitled to any Commission payment for that Payroll Period, and the Total Balance shall accrue to the Employee's Commission Bank as Past Balance.

---

[4] The Amendment to Employment Agreement, signed and dated February 2012 (perhaps giving rise to Mr. Billings' "February 2012 EA" label), by its terms amended only paragraph 4, subparagraph (b) concerning expense reimbursements. [Filing No. 93-7 at 15.] The reimbursements are not at issue in Mr. Billings' FLSA claims. Neither the Amendment itself nor any other evidence suggests that the Amendment had any impact on Mr. Billings' compensation. [*See* Filing No. 93-7 at 15 ("All other terms and conditions of the Agreement shall remain in full force and effect.").]

[Filing No. 81-6 at 7 (2016 Schedule A); *see* Filing No. 97-2 at 27 (materially identical 2012 Schedule A).]

Pursuant to Schedule A, Mr. Billings was paid a $910 biweekly salary throughout the entire relevant period.  [Filing No. 81-1 at 3-5; Filing No. 81-5 at 27-28.] This salary was reflected in every paystub Mr. Billings received during the relevant period.  [Filing No. 81-6 at 14-107.]  He was additionally paid a commission based upon the service fees he generated.  The commission plan, as set forth in Schedule A and as explained by Judy Roach, Vice President of Operational Finance, provided that where Mr. Billings earned more than $910 in commissions in a two-week pay period, he would accrue credit for the amount earned equal to his commissions minus $910. [5] [*See* Filing No. 81-1 at 4-6.]  In pay periods where Mr. Billings' commissions were equal to or less than $910, the negative balance would accrue to his commissions account.  Mr. Billings received a commission payment in every pay period where his commissions account had a positive balance.  For example, an employee who earned $1000 in commissions (using the commission calculation rate) in their first pay period would receive a payout of $90 (1000 - 910 = 90).  An employee who earned $500 in commissions in the first pay period and $2000 in the second pay period would receive no commission payment in the first pay period (due to not exceeding the

---

[5] Mr. Billings' objections to the declaration of Judy Roach are frivolous.  Mr. Billings has provided no evidence to suggest that that the employment agreements applicable to Mr. Billings differ in any way from those used by Ryze in the ordinary course and reviewed and relied upon by Ms. Roach in making her declaration. [*See, e.g.*, Filing No. 93-1 at 48-49.]  Her hypotheticals regarding the commissions, moreover, merely explain Ryze's operating procedures with which she has personal knowledge.  They do not depend upon her "mak[ing] connections for the [court] based upon [any] specialized knowledge," and therefore do not constitute expert testimony.  *United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012).  In fact, they only confirm that the plain language of the commission provision of Schedule A means what it says—something that Mr. Billings has wholly failed to contradict.

$910 threshold) and a commission payment of $680 after the second pay period ((500 - 910) + (2000 - 910) = 680).

During the relevant period, all commission payments were in addition to Mr. Billings' $910 biweekly salary.  [*E.g.*, Filing No. 81-1 at 6.]  No commission deficit was ever subtracted from his salary or paycheck, as confirmed by his paystubs.  [Filing No. 81-6 at 14-107.]  In other words, the only "penalty" for not accruing over $910 in commissions in a two-week period was the absence of a commission payment that pay period and, until any negative commission balance was made up, future pay periods.  It had no impact on Mr. Billings' $910 biweekly salary.

### C.  Procedural History

Mr. Billings originally filed this matter in California state court on August 22, 2017, alleging various causes of action under California law.  [Filing No. 1-1 at 4-29.]  On October 20, 2017, Mr. Billings filed an amended complaint in state court, adding claims under the FLSA for failure to pay minimum and overtime wages.  [Filing No. 1-1 at 30-65.]  On December 1, 2017, Ryze removed this matter to the Eastern District of California based upon the federal question raised by Mr. Billings' FLSA claims.  [Filing No. 1 at 1-9.]  On June 8, 2018, this matter was transferred to this Court, over Mr. Billings' objection, based upon a forum selection clause.  [Filing No. 19.]

On March 13, 2019, Ryze filed its Motion for Summary Judgment on Plaintiff's Claims Under the Fair Labor Standards Act.  [Filing No. 79.]  Ryze's Motion is fully briefed and ripe for decision.

**IV.**

**DISCUSSION**

The parties agree as to the basic legal framework governing Mr. Billings' FLSA claim. The areas of disagreement are largely factual. The Court addresses the remaining areas of dispute below, in the context of the governing law.

**A.  FLSA Administrative Exemption**

The FLSA entitles employees to a minimum wage and overtime pay unless they satisfy one of the exemptions set forth in the Act. *Schaefer-LaRose v. Eli Lily & Co.*, 679 F.3d 560, 572 (7th Cir. 2012); 29 U.S.C. §§ 206-07. At issue here is the exemption for "any employee employed in a bona fide . . . administrative . . . capacity . . . ." 29 U.S.C. § 213(a)(1). The statute expressly delegates authority to the Secretary of Labor to define the term "administrative capacity," *id.*, and the Secretary has promulgated "detailed regulations" delimiting the scope of the exemption, *Schaefer-LaRose*, 679 F.3d at 572.

The first such regulation defines administrative capacity by setting out a broad three-part test:

> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week [or $910 biweekly, *see* 29 C.F.R. § 541.600(b)], exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200; *see also Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016) (enjoining implementation and enforcement of amended salary rule). As relevant here, section 54.200 requires the employer, who bears the burden of establishing that an exemption

applies, to demonstrate 1) that the employee is paid on a salary basis and 2) that the employee's primary duties are of the type and quality set forth in paragraphs (2) and (3).  *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 867-70 (7th Cir. 2008).

Things are further simplified in this case by the fact that Mr. Billings challenges only Ryze's compliance with the salary test.  That test is set forth in a separate regulation:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a).  In broad terms, an employer may pay a salary more than the $455-per-week minimum based upon any method the employer desires but may not subject employees to "an employment policy that creates a significant likelihood of a deduction" from an otherwise fixed salary.  *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 371 (7th Cir. 2005) (internal quotations and alterations omitted).

**B.  Mr. Billings' Employment and the FLSA Salary Test**

As referenced above, Mr. Billings offers very little in the way of legal argument, and he does not meaningfully contest the legal framework set forth above.  Rather, the bulk of his briefing attempts to create disputed issues of fact as to whether the salary test has been satisfied.  In the Background section, Part II, *supra*, the Court set forth the facts as supported by the evidence not subject to genuine dispute.  Applying those facts to the salary test yields the straightforward and unassailable conclusion that Mr. Billings was paid $910 biweekly, which is a permissible way to meet the $455-per-week threshold under 29 C.F.R. § 541.600(b).  His commission payments were an additional form of compensation and, though "internally" subject to offsets (inasmuch as failing

11

to meet the $910 commission threshold would carry a negative commission balance which would need to be met before he could receive another commission payment), were never used to reduce or offset his actual salary.  All of this was confirmed by the paystubs and sworn declarations of Ryze employees familiar with and responsible for administering this system.  There is no evidence to suggest that this payment policy created any risk that Mr. Billings' salary could be reduced, and therefore it complied with the requirements of the salary test set forth in 29 C.F.R. § 541.200(a)(1) and 29 C.F.R. § 541.602(a).

The remainder of this Entry explains why Mr. Billings has failed to demonstrate a **genuine** issue of **material** fact in his opposition to summary judgment.  First, the Court addresses Mr. Billings' surreply and explains why Ryze's challenged evidence is properly considered on summary judgment.  Finally, the Court explains why, even if the challenged evidence were not considered, Mr. Billings has nonetheless failed to meet his burden of demonstrating a genuine issue of material fact.

### 1. Mr. Billings' Arguments on Surreply[6]

Mr. Billings' surreply raises a passel of objections to the evidence submitted by Ryze on reply.  These objections fall into three general categories: objections based upon the submission of new evidence on reply, objections based upon nondisclosure in discovery, and evidentiary objections.  The most important objections target the 2010 employment agreement and Declaration of Karla J. Elliott, which if credited establish that Mr. Billings signed and received the 2010 employment agreement and accompanying Schedule A.  [Filing No. 97-2 at 2-6; Filing No. 97-2 at 4-19.]

---

[6] Many of Mr. Billings' objections on surreply pertain to evidence upon which the Court did not rely in setting forth the factual background.  Those objections are summarily overruled as moot to the extent they are not addressed on their merits herein.

The first objection challenges Ryze's submission of evidence on reply.  [Filing No. 98 at 2-4.]  But Ryze does not proffer the evidence to support a new argument on reply.  Indeed, in conjunction with its initial brief in support of its Motion, Ryze proffered the declaration of Judy Roach, who explained that Mr. Billings had received his $910 biweekly salary, in addition to commissions pursuant to Schedule A, throughout the entire relevant period.  [Filing No. 81-1 at 2-6.]  Ryze offered the evidence on reply only to rebut Mr. Billings' assertion in his response that the 2009 commission-only employment agreement (which Mr. Billings perplexingly calls the "2012 EA") "was automatically renewed every year until superseded by the April 2016 EA." [Filing No. 92 at 7.]  The submission of counter evidence was wholly proper, *cf. Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987) (opinion of Posner, J.) ("A reply brief is for replying . . . ."), and, in any event, the Local Rules of this Court provided Mr. Billings with the opportunity to rebut Ryze's reply by filing a surreply—an opportunity of which he took advantage.

Mr. Billings' second objection, concerning the alleged nondisclosure of the evidence submitted on reply, requires lengthier discussion.  The most straightforward place for relief would be Rule 56(d), which Mr. Billings cites in support of his request that the Court deny Ryze's Motion without prejudice and allow for additional discovery.  [*See* Filing No. 98 at 7.]  The problem for Mr. Billings is that he did not comply with Rule 56(d), which requires the nonmovant to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).  Mr. Billings did not submit any affidavit or declaration making such a showing.  Nor does he set forth any "specified reasons" why he cannot present the facts that he believes controvert Ryze's assertions on reply.  In another section, he argues that the seven-day deadline for filing a surreply impeded his ability to respond—ignoring the fact that nothing

prohibited him from asking the Court for additional time.  Regardless, Mr. Billings' failure to comply with the declaration and specificity requirements means that Rule 56(d) can provide him no relief.

The other ground invoked by Mr. Billings is Rule 37(c), which provides in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). At issue here is Ryze's alleged failure to update his witness disclosures and document production, which must be "supplement[ed] or correct[ed] . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e).

An interesting quirk in this case is that merits discovery has not yet ended—indeed, a deadline has not yet been set.  [Filing No. 40 at 7.]  And Ms. Elliott testified that Ryze produced Mr. Billings' entire personnel file which, for reasons unknown or undisclosed, did not contain the 2010 employment agreement.  [Filing No. 97-2 at 3.]  Rather, while searching for the document in preparing for the reply on May 9, 2019, Ms. Elliott found a file belonging to a former human resources director, and Ryze was "previously unaware that the file existed." [Filing No. 97-2 at 4.]  According to Mr. Billings, Ryze supplemented its production with the 2010 agreement in the minutes leading up to the reply being filed on May 15, 2019, [Filing No. 98 at 10]; given that the file had only been found six days earlier and that discovery had not closed, this would seem to constitute a "timely" supplementation of Ryze's earlier discovery responses.

Mr. Billings protests, however, that he requested all employment documents months earlier and that Ryze did not explain its earlier efforts to locate the 2010 agreement or why it had not previously looked in the former human resources director's files.  [Filing No. 98 at 8-9.]  These

points raise valid questions as to the sufficiency of Ryze's discovery efforts, but they do not controvert Ms. Elliott's sworn declaration that Ryze did not know that its production was "incomplete" until May 2019, and therefore that the production and disclosures were "timely" under Rule 26(e).  What Mr. Billings is actually protesting is whether Ryze made a "reasonable inquiry" as to the "completeness" of Ryze's discovery response under Rule 26(g)(1).  An improper certification (meaning if Ryze failed to undertake a reasonable inquiry) "without substantial justification" is sanctionable, but such a sanction would require the Court to act on its own motion, since Mr. Billings has not so moved.  Fed. R. Civ. P. 26(g)(3).  It would be inappropriate for the Court to impose a Rule 26(g)(3) sanction without giving Ryze a chance to show cause and explain what efforts it made to locate the 2010 employment agreement.

Were Ryze's supplementation untimely, it would remain for the Court to assess whether the presumptive remedy of exclusion applied or whether the nondisclosure was "substantially justified or . . . harmless."  Fed. R. Civ. P. 37(c)(1).  "The following factors," the Seventh Circuit has said, "should guide district courts in making Rule 37 determinations: '(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.'"  *Uncommon, LLC v. Spigen, Inc.*, 2019 WL 2426298, at *3 (7th Cir. 2019) (publication pending) (quoting *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012)).

These factors are a mixed bag in this case.  As the Court has already explained, while the evidence offered by Ryze on reply is new evidence, it is actually cumulative of the evidence submitted in conjunction with Ryze's initial brief.  All along, Ryze has maintained that Mr. Billings has been subject to the Schedule A payment scheme, a claim backed by sworn testimony,

paystubs, and commission reports.  That Ryze has consistently claimed this minimizes (but does not eliminate) Mr. Billings' claim to surprise or prejudice.  *Cf., id.* at \*4 (noting that prejudice is minimized where the complaining party "must have" known that factual claim "was a centerpiece of its case").  Mr. Billings has also had the opportunity to either directly rebut Ryze's claim that he was subject to the terms of the 2010 employment agreement (i.e., with a declaration of his own), to seek a continuance of the surreply deadline in order to obtain such evidence, or to properly file a Rule 56(d) declaration to obtain further discovery.  That Mr. Billings did none of these things likewise weighs against exclusion.  *See, e.g., id.*; *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).  In the end, assuming that Ryze's evidence on reply was belatedly disclosed, "there was likely some prejudice" to Mr. Billings as a result of an inability to question Ryze's witnesses about the 2010 employment agreement.  *Uncommon, LLC*, 2019 WL 2426298, at \*5.  But "it was neither unforeseeable nor incurable" in light of Ryze's consistent position that Mr. Billings had signed an employment agreement identical in all material respects to the properly-disclosed 2016 employment agreement that subjected Mr. Billings to the Schedule A payment scheme.  *Id.*  The Court therefore declines to exclude the evidence under Rule 37(c).

Finally, Mr. Billings lodges a number of unpersuasive evidentiary objections, including hearsay, lack of personal knowledge, and violations of the best evidence rule.  Each is without merit.  The declarants assert under penalties of perjury that they have personal knowledge of the facts contained within their declarations and describe their tenure and roles with Ryze.  The spreadsheet Andrea Brovont, paralegal and assistant to Ryze's CEO, completed showing that Mr. Billings received the 2010 employment agreement is not hearsay.  It is both a record of her recollection, Fed. R. Evid. 803(5), and a record of a regularly conducted activity, Fed. R. Evid. 803(6); in the absence of any evidence to the contrary, Ms. Brovont's declaration establishes each

element of these exceptions.  The so-called best evidence rule likewise does not apply in light of Ryze CEO Karla Elliott's uncontroverted testimony that the version of the 2010 agreement provided on summary judgment is the same as the agreement sent to Mr. Billings.  *See* Fed. R. Evid. 1003.

In light of the foregoing, the Court **OVERRULES** Mr. Billings' objections lodged in his surreply.

### 2.  Mr. Billings' Evidentiary Showing

Were the Court to exclude Ryze's evidence on reply, it would remain Mr. Billings' task to demonstrate a genuine issue of fact as to whether he was paid a $910 biweekly salary pursuant to the policy outlined in Schedule A throughout the relevant period.  To briefly recapitulate, Judy Roach, Vice President of Operational Finance responsible for payroll, stated in her sworn declaration that Mr. Billings was subject to the Schedule A payment scheme, that he always received his $910 biweekly salary, and that his commissions in no way impacted that salary. [Filing No. 81-1.]  Each of the paystubs and commission reports reflect this salary with additional commission payments ranging from $0 to over $2000.  Even Mr. Billings himself testified that he did not know of a single pay period where he did not receive his salary:

> Q    You can take as—if you want to take as much time as you like to answer this question, but are there any pay periods in Exhibit 11 [comprised of Mr. Billings' paystubs] that show that you received a payment of less than $910 for any pay period, either as regular pay or as a combination of regular pay and paid time off?
>
> A    (Witness reviews document.)
>       I honestly don't know.  It doesn't appear that way based upon the presentations.
>
> Q    Do you recall any pay period from December 28, 2012, through the end of your employment when less than $910 was deposited in your bank account for each pay period?
>
> A    No.

[Filing No. 81-5 at 27-28 (objections omitted)].

The clearest statement of Mr. Billings' evidentiary showing—which is difficult to follow thanks to incomprehensible statements like "As highlighted from 'Number 3 MSJ Para 12' above," [Filing No. 92 at 24]—comes from his sureply, where he states:

> Ryze's payroll records for Plaintiff (Commission Pay Reports, Wage Statements), the testimony of Defendant's witnesses (Roach and Bramblett), and Plaintiff's expert report constitute factual evidence submitted with Plaintiff's Opposition that establishes a genuine issue of material fact as to whether Plaintiff was required to repay the amount by which his biweekly earned commissions were less than $910.00 from his future earned commissions.

[Filing No. 98 at 5-6]; *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles in briefs."). Mr. Billings also suggests that he "testified that he was paid a draw." [Filing No. 92 at 20.]

None of this evidence demonstrates more than a "metaphysical doubt" that Mr. Billings was paid pursuant to a policy that posed no risk that he would receive less than his mandated salary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 457 U.S. 574, 586 (1986). Beginning with Mr. Billings' testimony, he was asked, "While you were at Ryze, how were you paid?" [Filing No. 93-3 at 7.] Mr. Billings answered, "I would like to say it appeared to be a draw." [Filing No. 93-3 at 7.] But this is not testimony that "he was paid a draw"; how his payment "appeared" to Mr. Billings is irrelevant and, at any rate, any assertion that his salary was reduced by insufficient commissions is belied both by the uncontroverted records of his salaries and his admission that he was never paid less than $910—the amount of his biweekly salary.

Bennett Berger's expert report likewise fails to demonstrate a genuine issue of material fact. [Filing No. 93-4.] To the extent that expert evidence is even appropriate for such a straightforward factual issue, *see, e.g.*, *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994) ("If Buscaglia were seeking admission of the affidavit simply to advance the idea that a floor becomes slippery when wet, we would affirm a decision to exclude the evidence [based upon a

lack of helpfulness.]"), Mr. Berger's report simply makes no sense.  On the one hand, Mr. Berger concludes that "the employee is only being paid commissions and no base salary."  [Filing No. 93-4 at 9.]  On the other hand, under each "example" Mr. Berger lists Mr. Billings as receiving a $910 salary, and then calculates his commission balance.  [Filing No. 93-4 at 10-12.]  He provides no explanation whatsoever of what happened to the $910 salary he recognizes was included with each paycheck—and again, no evidence whatsoever suggests that any commission deficit caused his earned salary to be reduced.

The testimony of Judy Roach and Ryan Bramblett, Vice President of Special Projects, which Mr. Billings also relies upon, undermine rather than support Mr. Billings' position.  While Mr. Billings cites to Ms. Roach's testimony explaining how the commission system works (as detailed numerous times above) and how negative commission balances factor in, he conveniently ignores the passages which refute his counsel's mischaracterizations.  For example, where Mr. Billings' counsel asked whether a negative commission balance would be "deducted from this payroll period," Ms. Roach responded: "No."   [Filing No. 93-1 at 81.]  "Why," Mr. Billings' counsel rejoined, "would you not agree with that?"  [Filing No. 93-1 at 81.]  "Because it was not deducted. . . . [Mr. Billings] was paid his salary of 910," Ms. Roach explained.  [Filing No. 93-1 at 81.]  The same is true of how Mr. Billings treats Mr. Bramblett's testimony.  For example, Mr. Billings' counsel asked Mr. Bramblett about a negative commission balance and then asked, "And so that negative 86.32 need to be paid back; correct?"  [Filing No. 93-2 at 10.]  Mr. Bramblett responded, "No. . . . There is no payback of an earned salary."  [Filing No. 93-2 at 10.]  Mr. Billings' reliance on selective citations—avoiding the testimony which contradicts his claims— does not demonstrate a genuine issue of material fact and in fact borders on inappropriate advocacy.

Finally, the commission reports and paystubs also undermine Mr. Billings' position. Consistent with Ryze's evidence that Mr. Billings received an independent $910 salary, the commission reports documented both Mr. Billings' commission balance (which may have been negative if it failed to cover a past negative balance after subtracting the $910 threshold amount) and his salary. [*E.g.*, Filing No. 93-8 at 13.] For example, the report covering March 22, 2014 to April 4, 2014 documented the following "Commission Bank Balances":

| Commission Bank Balances | | | |
|---|---|---|---|
| Payroll Period | Prior Balance | Earned Commission for Period | Balance for Period |
| 3/8/2014 to 3/21/2014 | $0.00 | $0.00 | ($314.20) |
| 3/22/2014 to 4/4/2014 | ($314.20) | $34.64 | ($279.56) |

[Filing No. 93-8 at 13.] While Mr. Billings earned more than the $910 threshold for that pay period, it was offset by a -$314.20 balance for the pay period ending March 21, 2014, resulting in a negative commission balance of -$279.56 as of April 4, 2014. This was all documented— along with the $910 salary—in the "Current Period Summary":

| Current Period Summary | |
|---|---|
| Comm. Bank Threshold: | $910.00 |
| Past Comm. Bank Balance: | ($314.20) |
| Current Earned Commission | $34.64 |
| Total Corrections: | $0.00 |
| Net Earned Commission: | $0.00 |
| Net Misc. / Other Pay: | $0.00 |
| Total Commission Balance: | ($279.56) |
| Salary: | $910.00 |
| Comm. Paid this Period: | $0.00 |

[Filing No. 93-8 at 13.] Again, Mr. Billings has produced no evidence to show that the "Salary" line was ever reduced by a negative "Total Commission Balance." The paystub for April 4, 2014

(again, just as one example) confirms the story told by the commission report, demonstrating that

Mr. Billings had a "Commission" of zero while he still received his $910 salary:



[Filing No. 81-6 at 47.]

Were Mr. Billings' theory correct, the salary would have been reduced by the negative

commission balance of $279.56.  But no evidence—no testimony, bank records, notations on pay

stubs, or anything other than the expert's inexplicable say-so—demonstrates that this is the case.

Thus, even without the evidence submitted by Ryze on reply, Mr. Billings has wholly failed to

demonstrate a genuine issue of material fact as to whether his payments satisfy the salary test.  He

was paid a biweekly salary which met the $910 threshold, without any risk of deduction due to

performance.  And Mr. Billings does not challenge either of the "duties" elements of 29 C.F.R. § 541.200.  Accordingly, Mr. Billings satisfies the administrative exemption to the FLSA minimum and overtime wage provisions, so his FLSA claims fail as a matter of law.

**V.**

**CONCLUSION**

Mr. Billings' factual arguments suffer from a complete lack of evidentiary support. Because Mr. Billings was exempt from the FLSA's minimum and overtime wage requirements, his FLSA claims fail as a matter of law.  The Court therefore **GRANTS** Ryze's Motion for Summary Judgment.  [79]  Because Mr. Billings does not have a viable FLSA claim, the Court **DENIES IN PART** Mr. Billings' pending Motion to Certify Combined Class Action and FLSA Collective Action [63] to the extent it seeks FLSA collective action certification.  *See Weil v. Metal Techs., Inc.*, 2019 WL 2281567, at *4 (7th Cir. 2019) (publication pending) (affirming decertification where plaintiffs lacked "a theory of liability").

The remainder of Mr. Billings' Motion to Certify and the other pending motions remain under advisement.  Their treatment will be addressed by separate entry.

Date: 6/18/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**